Filed 11/14/13 (on remand from Supreme Court)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re SCOTT H., a Person Coming Under the Juvenile Court Law. | B236743 (Los Angeles County Super. Ct. No. MJ19972) |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>SCOTT H.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Robin R. Kesler, Temporary Judge.  Affirmed.

———

Law Office of Anthony D. Zinnanti and Anthony D. Zinnanti for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey, Mary Sanchez and Taylor Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

———

Scott H.'s appeal from the order of restitution for the victim and his family members entered after the juvenile court adjudged him a ward of the court under Welfare and Institutions Code section 602[1] again is before us after transfer from the Supreme Court. In our original opinion, we held that, although the direct victim of Scott's conduct was entitled under section 730.6 to restitution from Scott, the direct victim's family members, as derivative victims, were not because the statute did not include derivative victims in its definition of victim. We, therefore, reversed the order awarding restitution with directions for the juvenile court to enter a new order awarding restitution only to the direct victim. In the appeal, the People did not defend the restitution award on constitutional grounds, but merely argued that section 730.6, governing restitution in juvenile delinquency cases, should be interpreted to include derivative victims as in Penal Code section 1202.4, governing restitution in criminal cases, even though Penal Code section 1202.4 contains derivative victims in its definition of victim and section 730.6 does not.

The Supreme Court on its own motion granted review of our opinion, after a nonparty had filed a request for depublication, and transferred Scott's appeal back to us "with directions to vacate [our] decision and reconsider the cause in light of article I, section 28 of the California Constitution (as amended by Proposition 9, the Victim's Bill of Rights Act of 2008, known as 'Marsy's Law') and *People v. Runyan* (2012) 54 Cal.4th 849, 858-859 [(*Runyan*)]." We asked Scott and the People to brief the impact, if any, of the Constitution and *Runyan* on the definition of victim in section 730.6. Following the direction of the Supreme Court, and after considering the parties' briefing, we conclude that section 730.6, in light of constitutional mandates, must be interpreted to include derivative victims and thus that the restitution award to the direct victim's family members was proper. We, therefore, affirm the order awarding restitution to the direct victim and his family members.

---

[1] Statutory references are to the Welfare and Institutions Code unless otherwise noted.

## FACTUAL AND PROCEDURAL BACKGROUND

A petition under section 602, dated October 5, 2010, alleged that, on or between December 1, 2009 and January 30, 2010, Scott committed a lewd act upon a child in violation of Penal Code section 288, subdivision (a). According to the probation report, the charge stemmed from an incident where Scott, then 17 years old and an instructor at the Tao Kwon Do studio owned by the victim's mother and stepfather, followed the 12-year-old victim into a bathroom stall at a restaurant, locked the door, pulled down the victim's pants and underwear, touched the victim's penis and put it in his mouth. The victim told his father about the incident after the father found numerous texts of a sexual nature from Scott to the victim on the victim's cellular telephone. On October 21, Scott admitted the charge, and the juvenile court declared him a ward of the court and placed him home on probation for six months with various terms and conditions.

On July 14, 2011, the People moved under Penal Code section 1202.4 for an order of $9,060 in restitution on behalf of the victim and his mother, stepfather and siblings for fees incurred for mental health services to address the "turmoil and stress" suffered by the family as a result of Scott's conduct. As supporting evidence, the People presented a declaration from the victim's mother, two letters from the treating therapist, one explaining the need for treatment of the victim and his family members and one detailing the treatment provided, and a report from the therapist listing the number of sessions attended and therapy expenses incurred by each family member.

At a September 6 hearing on the motion, Scott objected to a restitution award on the ground that the family sought mental health services only once the juvenile court had stated on the record that reimbursement would be available for such services and 90 days following the victim's disclosure of Scott's conduct, rather than immediately after the disclosure. Scott's counsel argued, "[I]t's clear that the actual incident in this case occurred on December 9th . . . . The incident didn't come to light, according to the moving papers, until July 28th of '10. It's also clear . . . that when the victim goes to counseling is October the 25th of '10. So we're talking about 90 days from the July 28th

3

date to the October 25th date. . . . [O]n Thursday, October the 10th, that was the court date where the court specifically put on the record with the mother present that the mother would be entitled to counseling monies if such counseling was there. So until the court made that statement to the mother no counseling was had by [the victim] that they were saying was [necessitated] by this one act[.] . . . They wait for approximately three months and coincidentally five days after the court makes it known on the record in their presence that they are entitled to psychological counseling reimbursement and all of a sudden the damn bursts forth and everybody's going to counseling when no one went to counseling before that date."

After reviewing the evidence, and hearing argument, the juvenile court awarded $9,540 in restitution. The court stated, "Having reviewed the evidence and read the cases as provided [the] court is now satisfied that the documentation as provided from the . . . therapist, which is notarized[,] [is] sufficient for this court with regards to restitution. The dates of service with regards to the family is acceptable showing that it occurred at least sometime after. It's not an encounter, it's a lewd act on a minor. Let's not forget that there's devastation that can be family-wide with regard to Scott's actions. . . . So court orders . . . restitution for therapy in the amount of $9540. That's through the dates as provided. In the event there's further therapy that's provided for these losses court will look at additional restitution. . . . So $9540 is the court's order for restitution, and that is as of the dates provided, and if there's any further losses that can be attributed to that[,] court will make the order at that time."[2]

---

[2]    The People in their motion requested $9,060 in restitution, and the juvenile court awarded $9,540. Although the record does not contain all of the exhibits admitted at the restitution hearing, it appears that the discrepancy is due to services rendered after the filing of the motion but before the time of the hearing. Scott does not contest the discrepancy, and we, therefore, do not address it further.

**DISCUSSION**

Scott contends the restitution order is erroneous because it includes an award for mental health services received by the direct victim's family members, but the family members are not victims of his offense for purposes of section 730.6. He maintains that constitutional provisions covering restitution do not alter the statutory definition of victim in section 730.6 and that policy reasons exist to limit restitution awards in juvenile delinquency cases to direct victims, even though family members are victims for purposes of restitution awards in criminal cases under Penal Code section 1202.4. The People contend that section 730.6 should be interpreted to include derivative victims, even though they are not listed in the statute as in Penal Code section 1202.4, and now argue that constitutional mandates require that family members fall within section 730.6's definition of victim. Although we agree with Scott that certain policy reasons support limiting restitution awards in juvenile delinquency cases to direct victims, we are constrained by the Constitution to interpret section 730.6 to include family members as victims entitled to restitution based on Scott's conduct.[3]

Section 730.6 governs restitution in juvenile delinquency cases. Under the statute, "a victim of conduct for which a minor is found to be a person described in Section 602 who incurs any economic loss as a result of the minor's conduct shall receive restitution directly from that minor." (§ 730.6, subd. (a)(1).) As relevant, the juvenile court "shall

---

**3** As noted, Scott, in the juvenile court, contested an award of restitution on the ground that the family did not seek mental health services until 90 days after the disclosure of Scott's conduct with the victim. On appeal, he does not challenge the restitution award as it applies to the direct victim but contends it is erroneous to the extent it compensates the direct victim's family members for their mental health services. The People now defend the award on constitutional grounds. Whether section 730.6 provides for an award of restitution to the direct victim's family members is a question of law, subject to our independent review (see *In re R.D.* (2008) 163 Cal.App.4th 679, 686), which we can address even though the parties did not raise the issue in the juvenile court (see *In re R.L.* (2009) 170 Cal.App.4th 1339, 1343, fn. 4). So too is the impact of the Constitution on section 730.6 a question of law that we can address on appeal even though the People previously did not rely on it to support an award of restitution to the direct victim's family members. (*Runyan*, *supra*, 54 Cal.4th at p. 859, fn. 3.)

order the minor to pay, in addition to any other penalty provided or imposed under the law, . . . [¶] . . . [¶] [r]estitution to the victim or victims, if any, in accordance with subdivision (h)." (*Id*. at subd. (a)(2).) Subdivision (h) of the statute provides that economic loss includes: (1) "[f]ull or partial payment for the value of stolen or damaged property"; (2) "[m]edical expenses"; (3) "[w]ages or profits lost due to injury incurred by the victim, and if the victim is a minor, wages or profits lost by the minor's parent, parents, guardian, or guardians, while caring for the injured minor"; and (4) "[w]ages or profits lost by the victim, and if the victim is a minor, wages or profits lost by the minor's parent, parents, guardian, or guardians, due to time spent as a witness or in assisting the police or prosecution." (*Id*. at subd. (h).) In addition to the list in the statute, economic loss has been interpreted to include the cost of mental health services provided to the victim as the result of the minor's conduct. (*In re M.W.* (2008) 169 Cal.App.4th 1, 6-7.)

In defining who is entitled to restitution, section 730.6, subdivision (j), provides, "For purposes of this section, 'victim' shall include: [¶] (1) The immediate surviving family of the actual victim. [¶] (2) Any governmental entity that is responsible for repairing, replacing, or restoring public or privately owned property that has been defaced with graffiti or other inscribed material . . . and that has sustained an economic loss as the result of a violation" of specified provisions. Penal Code section 1202.4, in contrast, lists an additional category of "victim," namely, "[a] person who has sustained economic loss as the result of a crime and who satisfies any of the following conditions: [¶] (A) At the time of the crime was the parent, grandparent, sibling, spouse, child, or grandchild of the victim. [¶] (B) At the time of the crime was living in the household of the victim. [¶] (C) At the time of the crime was a person who had previously lived in the household of the victim for a period of not less than two years in a relationship substantially similar to a relationship listed in subparagraph (A). [¶] (D) Is another family member of the victim, including, but not limited to, the victim's fiancé or fiancée, and who witnessed the crime. [¶] (E) Is the primary caretaker of a minor victim." (Pen. Code, § 1202.4, subd. (k)(3).) The Legislature amended Penal Code section 1202.4 in 1999 to include derivative victims, and in 2004 further amended the statute to specify those individuals now listed in

6

subdivision (k)(3) as derivative victims. (See *People v. Giordano* (2007) 42 Cal.4th 644, 653 & fn. 3, citing Stats. 1999, ch. 584, § 4 & Stats. 2004, ch. 223, § 2, eff. Aug. 16, 2004.) But the Legislature did not make such amendments to section 730.6. The two statutes, therefore, differ in the respect that section 730.6 does not provide for a restitution award to compensate derivative victims, as in the victim's family members, for economic loss, except in the circumstance when the surviving family members of the victim are being compensated for the victim's losses. (See § 730.6, subd. (j)(1).)

The question thus becomes whether in light of the difference in statutory language between section 730.6, which governs in juvenile delinquency cases, and Penal Code section 1202.4, which governs in criminal cases, the Constitution requires us to interpret section 730.6 to include derivative victims like the family members of the victim of Scott's conduct. We conclude that it does.

Article I, section 28 of the Constitution, as amended by Proposition 9, the Victim's Bill of Rights of 2008, known as "Marsy's Law," provides for a broad spectrum of victim's rights, including restitution. It defines "'victim'" as "a person who suffers direct or threatened physical, psychological, or financial harm as a result of the commission or attempted commission of a *crime or delinquent act*. The term 'victim' also includes the person's spouse, parents, children, siblings, or guardian, and includes a lawful representative of a crime victim who is deceased, a minor, or physically or psychologically incapacitated. The term 'victim' does not include a person in custody for an offense, the accused, or a person whom the court finds would not act in the best interests of a minor victim." (Cal. Const., art. I, § 28, subd. (e), emphasis added.)

The family members of the victim of Scott's conduct fall within this constitutional definition of victim, which specifies that it applies to a crime or delinquent act, thus in both criminal and juvenile delinquency proceedings, despite the more restrictive language in section 730.6, subdivision (j). The constitutional language must prevail. To the extent the statutory language conflicts with that in the Constitution, the constitutional provision controls. (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 800-801, fn. 11.) Moreover, the statutory and constitutional language theoretically can be read in congruence, as

7

section 730.6, subdivision (j), uses the word "includes" in its definition of victim and thus does not by its express terms exclude the victim's family members from restitution. "'The term "includes" is ordinarily a word of enlargement and not of limitation.' [Citation.]" (*People v. Avila* (2013) 212 Cal.App.4th 819, 827.) We, therefore, conclude that, in light of constitutional mandates, derivative victims, like the family members of the victim of Scott's conduct, fall within the purview of a restitution award under section 730.6.[4]

Scott contends that the constitution does not require such an interpretation because the restitution provision does not specifically include delinquent acts. The provision states that victim's rights include restitution: "(A) It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer. [¶] (B) Restitution shall be ordered from the convicted wrongdoer in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss." (Cal. Const., art. I, § 28, subd. (b)(13).) According to Scott, because the restitution provision refers to "criminal activity," "crimes" and "convicted wrongdoer," terms that are not applicable in juvenile delinquency proceedings, the Constitution's definition of victim need not apply in such proceedings. We recognize that the language of the restitution provision allows for such argument. But we disagree with Scott that it means a victim in juvenile delinquency proceedings does not include the direct victim's family members. Scott ignores the language in the Constitution's definition of victim, which specifically applies to harm suffered "as a result of the commission or attempted commission of a *crime or delinquent act*."

---

[4] The Fifth District employed a constitutional analysis in *In re M.W.*, *supra*, 169 Cal.App.4th 1 to affirm a restitution award for the cost of the direct victim's mental health services. The adjudicated minor challenged the award on appeal on the ground that, although Penal Code section 1202.4, subdivision (f)(3)(C), identifies mental health services as an economic loss, section 730.6, subdivision (h), does not and thus should not be interpreted to provide restitution for such services, despite their inclusion in the criminal statute. The appellate court rejected the adjudicated minor's argument. (*In re M.W.*, at pp. 4-7.)

8

(*Id*. at subd. (e), emphasis added.) Moreover, although the constitutional language in the restitution provision certainly would avoid any ambiguity if it included the words delinquent act and adjudicated wrongdoer, no doubt exists, by virtue of section 730.6, that restitution is a victim's right in juvenile delinquency cases. (See *In re Alexander A.* (2011) 192 Cal.App.4th 847, 853 ["In proceedings involving minors, the juvenile court is vested with discretion to order restitution consistent with the goals of the juvenile justice system"].)

Scott also contends that including derivative victims, like the family members of his victim, within the purview of section 730.6 conflicts with the protections afforded to minors through juvenile delinquency proceedings by creating "a sea change in the accessibility and confidentiality of juvenile proceedings." "The goal of the juvenile justice system is to provide minors under the jurisdiction of the court with care, treatment, and guidance that is consistent with their best interests and to hold them accountable for their behavior as appropriate under the circumstances, consistent with the interests of public safety and protection. [Citation.] In enforcing, interpreting and administering the juvenile court law, the trial court also is to consider the safety and protection of the public, the importance of redressing injuries to victims and the best interests of the minor. [Citation.]" (*In re Alexander A.*, *supra*, 192 Cal.App.4th at p. 853.) Expanding restitution in juvenile delinquency cases to derivative victims does put a greater burden on the adjudicated minor, whom the system seeks to rehabilitate according to his or her best interests. Nevertheless, section 730.6, subdivision (h), provides that "[a] minor's inability to pay shall not be considered a compelling or extraordinary reason not to impose a restitution order, nor shall inability to pay be a consideration in determining the amount of the restitution order." And the Constitution specifically includes delinquency proceedings in its provision of the rights "[t]o reasonable notice of all public proceedings" and "[t]o be heard," while at the same time including "delinquent act" in its definition of victim. (Cal. Const., art. I, § 28, subds. (b)(7) & (8), (e).) As a result, although certain policy considerations seem to favor limiting restitution awards in juvenile delinquency matters to the direct victim, the

9

constitutional provisions support the juvenile court's award of restitution to the family members of the direct victim of Scott's conduct.[5]

**DISPOSITION**

The order is affirmed.

**CERTIFIED FOR PUBLICATION.**

ROTHSCHILD, J.

We concur:

MALLANO, P. J.

CHANEY, J.

---

[5] Scott also challenges the restitution order as "possibl[y] perpetual" based on the juvenile court's statement that it would consider additional restitution for future mental health services. We do not view the court's statement as committing to an award of restitution for future mental health services. In any case, given no order awarding restitution for future mental health services is before us, we need not decide whether such an award would be authorized by section 730.6.