Filed 2/25/14  In re Christian B. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re CHRISTIAN B., a Person Coming Under the Juvenile Court Law. _____ | B240839 |
| THE PEOPLE, | (Los Angeles County Super. Ct. No. MJ18194) |
| Plaintiff and Respondent, | |
| v. | |
| CHRISTIAN B., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robin R. Kesler, Judge.  Affirmed.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Christian B., a minor, appeals from the order of wardship (Welf. & Inst. Code, § 602) entered following his admission he committed a lewd act upon a child (Pen. Code, § 288, subd. (a)). The court ordered appellant placed home on probation. We affirm the order of wardship.

## FACTUAL SUMMARY

The probation report filed June 2, 2009, reflects that between about January 1, 2008, and December 17, 2008, appellant, who was about 14 years old, committed a violation of Penal Code section 288, subdivision (a) against Giovanni T. (Giovanni), who was about eight years old. During the above period, appellant rubbed Giovanni's penis through his pants. Appellant later lowered appellant's pants and underwear, had Giovanni do the same, and had Giovanni sit on appellant's lap. Subsequently, appellant had Giovanni orally copulate him. Finally, appellant attempted to sodomize Giovanni.

## ISSUE

Appellant claims the trial court erroneously ordered $26,633.48 in restitution.

## DISCUSSION

*The Trial Court's Restitution Award Was Proper.*

1. *Pertinent Facts.*

Based on appellant's conduct, a petition filed April 6, 2009, alleged appellant committed a violation of Penal Code section 288, subdivision (a) between January 1, 2008, and December 17, 2008. On July 13, 2009, appellant admitted the charge and, on July 27, 2009, the court entered an order of wardship and ordered appellant placed on probation.

On April 21, 2011, the People filed a motion for restitution (motion). The motion discussed facts about the offenses, then stated, "As a result of this traumatic experience, the victim [Giovanni] underwent mental and emotional distress and developed anger issues. In an effort to cope with these problems, the victim had to attend therapy once per week, karate lessons three times per week, and had pediatric appointments three times per week for several months. The victim also had suicidal ideations because of this

crime . . . . He was rushed to . . . a special child foresight team that assists children in these matters, and had to be closely monitored from thereon."

The motion later stated, "The mother of the victim, . . . [hereafter, Karen] had experienced major depression and anxiety disorder which resulted in a medically authorized leave of absence from work beginning April 27, 2009 until May 16, 2010 and thereby suffered a loss in the amount of $27,141.60.[1] She also had to seek therapy for herself, attended court proceedings and transport the [victim] to and from treatment." (*Sic*.) The motion later stated, "The reasons for [Karen's] absence from work are twofold: First, she had to care for her injured child who had numerous appointments to deal with his victimization. Second, [Karen] was forced to take time off work to deal with her own mental health issues that developed because of the minor's actions."

Karen's supporting declaration stated, inter alia, "When my son first told me of these crimes against him in January of 2009, it turned my family's life upside down. The actions of the perpetrator have wrecked our family and we will forever have to endure the consequences for the rest of our lives. [¶] . . . Upon learning of the crimes, it caused severe mental and emotional distress for me that lasted several months. I was depressed, could not sleep, had anxiety attacks and was very stressed out. I felt as though I could not protect my own son. My anxiety went as far as making me put locks on our house gate to give some protection to my family. [¶] . . . [¶] . . . On or about April 16, 2009, I had a nervous breakdown. I decided to see a doctor and my first visit was on or about April 27, 2009 at Kaiser Permanente [Kaiser]. My doctor recommended that I take time off work to stabilize, which I did."

The motion was supported by reports from various Kaiser health care professionals whom Karen saw. For example, one report signed April 27, 2009, by a marriage family therapist (MFT) indicated Karen was presented "as a result of increased difficulties dealing with her [son's] molestation. . . . Since he was molested 3 [months] ago she has problems with sleep, concentration and anxiety attack." The report also

---

[1]     The trial court later determined the correct amount was $26,633.48.

3

stated, "[Patient] reports she was raised by a single mother. Her father was an abusive man who abused her mother. He left when she was young however was force into tx [*sic*] at age 5 briefly with her father. He was somewhat of a stalker with family."

The report continues, "She married 9 years ago and feels marriage is going well. Trouble began with [*sic*] son was molested [by appellant] 3 [months] ago. [Patient] has had poor sleep and difficulty coping at work. She states she experienced an anxiety attack and [went] to Kaiser recently. [¶] Patient works for the DMV and is making mistakes." The MFT diagnosed Karen as suffering from an adjustment disorder with an anxious and depressed mood.

The superior court file in this case contains another Kaiser medical doctor's report signed June 3, 2009.[2] The report indicates Karen had been suffering from depression for the last two years. The report also states, "getting worse ever since the male cousin was charged with sexually molesting her son last December, 2008, . . . and the long and very painful court hearings over the past 6 months."

The report also states Karen had a mood disorder of depression "[a]nd related to increased job stress over the past 2 years." The report further states, concerning Karen's primary stressors, "Work: High stress job as a customer representative at the DMV for the past couple of years during which time their staff has been drastically downsized. [¶] Legal system: Long complicated court hearings and other legal actions all related to the prosecution of [appellant for the molestation of Giovanni]." The report stated concerning her past history that her depression was probably related "to symptoms of a prolonged Adjustment Disorder with mixed anxiety and depression, related, in turn, to an Occupational Problem, or to job stress over the previous 2 years."

The report further stated, "Frequent specific thoughts of suicide and of [homicide] regarding the alleged perpetrator against her [seven-year-old] son, . . ."

A report attached to the motion, i.e., a medical doctor's report signed August 3, 2009, discussed Karen's migraine headaches and medication therefor, then stated,

---

[2] The report is not attached to the motion.

"Another complicating factor was her outrage at her 8[-year-old] son's male cousin who sexually molested and raped him, after appearing in court now on 5 occasions, at the last of which, on 7-27-09, she was unable to control herself in front of him in court, and was reprimanded by the judge." Various additional reports attached to the motion reflect medically authorized leaves of absence for Karen up to May 16, 2010.

On April 29, 2011, appellant filed a response to the motion, arguing that based on the Kaiser records, including records attached to the People's motion, Karen should not be awarded restitution because she had mental and psychological problems preexisting appellant's molestation of Giovanni.

At the April 19, 2012 hearing on the motion, appellant argued restitution to Karen was improper. Appellant's counsel represented, inter alia, that "having reviewed the medical records that were provided, I believe it was from the People regarding [Karen]," appellant's counsel had concluded she had preexisting conditions. Appellant's counsel specifically referred to the June 3, 2009, and August 3, 2009 reports.

Following argument, the court indicated it had considered the law and had reviewed the superior court file for evidence of Karen's work problems before and after the molestation of Giovanni. The court later stated, "I have also reviewed the letters from the psychiatrist as provided [and] all indicate that the lost wages were started and due to this event, no lost wages prior to. It looked like she was working hard, including some overtime prior to, until she actually stopped work altogether." The court also stated, "[Karen] . . . didn't start losing wages until such time as the actual petition was filed; she was able to hold it together until then. Court does find that petition as filed here her lost wages are reasonably related to this offense, which shows in all the documentation provided." (*Sic.*)

Finally, the court stated, "Court orders restitution of lost wages in the amount of $26,633.48.[3] . . . [E]ven if she had some prior stress because of her job before this

---

**3** There is no dispute Karen's hourly wage multiplied by the hours she was absent from work totals $26,633.48.

event, this event, . . . I guess . . . was the straw that broke the camel's back, which she could no longer work while this was going on." (*Sic.*)

   b. *Analysis.*

   Appellant claims the trial court erroneously ordered $26,633.48 in restitution to Karen. We reject the claim. "Generally speaking, restitution awards are vested in the trial court's discretion and will be disturbed on appeal only where an abuse of discretion appears." (*In re K.F.* (2009) 173 Cal.App.4th 655, 661.) " ' "When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court." ' [Citation.]" (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132.)

   "The court abuses its discretion when it acts contrary to law . . . or fails to 'use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious.' [Citation.]" (*In re Anthony M.* (2007) 156 Cal.App.4th 1010, 1016.) When an appellant argues the evidence before the trial court was insufficient to establish the amount awarded, we review the issue for substantial evidence. (*In re K.F.*, *supra*, 173 Cal.App.4th at pp. 661-662.)

   Appellant filed his opening and reply briefs prior to the filing of the decision in the case of *In re Scott H.* (2013) 221 Cal.App.4th 515 (*Scott H.*). In those briefs, appellant argued the restitution award in this case was erroneous because Karen, as Giovanni's mother, was not a direct victim of appellant's offense but a derivative victim as a family member, and Welfare and Institutions Code section 730.6, the sole authority for restitution in juvenile cases, did not authorize restitution for derivative victims.

   However, we reject appellant's argument because *Scott H.* held that in light of article I, section 28, subdivision (e) of the California Constitution, family members of a direct victim who is the victim of conduct for which a minor is found to be a person

6

described in Welfare and Institutions Code section 602 are derivative victims entitled to restitution under section 730.6. (*Scott H.*, *supra*, 221 Cal.App.4th at pp. 518-524.)[4]

Appellant similarly argued in his opening and reply briefs the restitution award in this case was an unreasonable probation condition on the ground it was not reasonably related to his conduct or future criminality because appellant injured Giovanni, not Karen. However, assuming that issue was preserved for appellate review, the clear implication from *Scott H.* is a probation condition imposing restitution for injury to a family member as a derivative victim is not per se unreasonable. Moreover, such restitution is mandatory. (Welf. & Inst. Code, § 730.6, subds. (a)(1), (2)(B), (h)(3), & (l).)

Appellant also argues the restitution award was not reasonably related to his conduct because Karen had preexisting conditions. However, " '[A] wrongdoer in criminal cases as in civil torts takes his victim as he finds him.' [Citation.]" (*People v. Taylor* (2011) 197 Cal.App.4th 757, 764.) Accordingly, a defendant is liable for loss arising from his conduct even if "by reason of some preexisting condition, his victim is more susceptible to injury . . . ." (*Rideau v. Los Angeles Transit Lines* (1954) 124 Cal.App.2d 466, 471.) We see no reason not to apply these general principles to juvenile restitution.

Karen's loss of earnings was caused by her absence from work resulting from (1) the time she spent attending to Giovanni's needs as a consequence of appellant's molestation of him and (2) the severe mental and psychological trauma she experienced as a result of her son's molestation. The fact she may have had preexisting conditions did not disentitle her to compensation, and appellant cites no evidence her absence from work was wholly caused by any preexisting condition. The trial court, aware of the issue of Karen's preexisting conditions, made implied factual findings her loss of earnings resulted from appellant's molestation of Giovanni. Appellant's argument fails.

---

[4]    There is no dispute a victim for purposes of Welfare and Institutions Code section 730.6 is entitled to restitution for wages or profits lost due to injury incurred by the victim. (Welf. & Inst. Code, § 730.6, subds. (a)(1), (2)(B), & (h)(3).)

Although appellant conceded in his opening and reply briefs Karen was a derivative victim, he denies in his supplemental letter brief[5] she was a derivative victim because: (1) she had preexisting conditions and (2) the People failed to provide testimony or declarations from her psychologist explaining the need for treatment or type of treatment provided. We have already addressed the preexisting conditions issue.

Moreover, Karen's supporting declaration, and the supporting medical reports, demonstrated Karen was absent from work as a result of her taking care of Giovanni and her independent severe mental and emotional distress caused by appellant's molestation of Giovanni. Appellant did not, in his filed response to the motion, or during his argument at the hearing, ever object to the trial court's reliance on these documents. Appellant himself relied on the medical reports to argue against the restitution award, effectively stipulating the court could rely on them. Karen's declaration and the reports provided a factual and rational basis, and substantial evidence, for the trial court's restitution award. The trial court's restitution award of $26,633.48 to Karen was proper.

---

[5] We asked for and received supplemental briefing on the issue of the impact, if any, of *Scott H.* on this case.

### *DISPOSITION*

The judgment (order of wardship) is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KITCHING, J.

We concur:


KLEIN, P. J.


ALDRICH, J.