Filed 10/29/20  In re M.J. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re M.J., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | E074451 |
| Plaintiff and Respondent, | (Super.Ct.No. J273108) |
| v. | OPINION |
| M.J., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Winston S. Keh, Judge.  Affirmed.

Dawn S. Mortazavi, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

1

# FACTUAL AND PROCEDURAL HISTORY

## A.    PROCEDURAL HISTORY

On October 2, 2017, a petition under Welfare and Institutions Code section 602 charged minor and appellant M.J. (minor) with a single count of battery on a school employee under Penal Code section 243.6.  On December 17, 2017, minor agreed to informal probation under Penal Code section 654.2.

On December 27, 2017, a first amended petition charged minor with two additional counts:  assault by means likely to produce great bodily injury under Penal Code section 245, subdivision (a)(4) (count 2); and battery on school property under Penal Code section 243.2, subdivision (a)(1) (count 3).  On March 7, 2018, counts 2 and 3 were dismissed without prejudice.

On April 26, 2018, a second amended petition against minor was filed.  The petition alleged the three counts asserted in the first amended complaint, and also charged minor with vandalism under Penal Code section 594, subdivision (b)(1) (count 4), and weapon on school grounds under Penal Code section 626.10, subdivision (a)(1) (count 5).

On May 5, 2018, minor admitted to a violation of count 4, vandalism under Penal Code section 594, subdivision (b)(1).  The court then dismissed the remaining counts and placed minor on formal probation with terms and conditions.

On August 8, 2018, a subsequent petition charged minor with second degree robbery under Penal Code section 211 (count 1); receiving stolen property under Penal Code section 496, subdivision (a) (count 2); and being an unlicensed driver under Vehicle Code section 12500, subdivision (a) (count 3).

2

On December 18, 2018, a first amended subsequent petition charged minor with seven new counts of grand theft of a person under Penal Code section 487, subdivision (c) (counts 5-11).

Two days later, on December 20, 2018, minor admitted to second degree robbery under Penal Code section 211 (count 1), and two counts of grand theft of a person under Penal Code section 487, subdivision (c) (counts 5-6). The juvenile court dismissed the remaining counts.

On January 9, 2019, a petition charged minor with six counts of second degree robbery with a deadly weapon under Penal Code section 211 (counts 1-6). On June 12, minor admitted to one count of second degree robbery with a deadly weapon under Penal Code section 211 (count 1). The court then dismissed the remaining counts. Thereafter, the Riverside County Superior Court granted minor's request to transfer the case for disposition to San Bernardino County.

On July 23, 2019, the court held a dispositional hearing and ordered minor's commitment to the "Gateway"[1] program. The court also added 27 new probation terms but stayed all the victim restitution probation terms pending a restitution hearing.

On December 11, 2019, following a restitution hearing, the court ordered minor to pay victim restitution totaling $40,443.99 to S.B.

---

[1] Gateway is a residential program developed by the San Bernardino County Probation Department, in collaboration with other county agencies, which utilizes evidence-based assessments, treatments and evaluations aimed at reducing recidivism. Services include medication support, mental health assessments, individual and family treatment, and alcohol and drug counseling. (<https://wp.sbcounty.gov/dbh/mental-health-services/children-youth/jjp/gateway> [as of October 29, 2020].)

On January 6, 2020, minor filed a timely notice of appeal from the restitution order.

B.     FACTUAL HISTORY[2]

On August 5, 2018, a group of males, including minor, used what appeared to be a handgun and demanded that victim J.W. hand over his cell phone to them.  J.W., who feared for his life, complied.

Later that day, the same group used the same weapon to demand a purse and cell phone from S.B.  Because she feared for her life, S.B. complied.

The next day, the group of males, including minor, was arrested.  The weapon was later identified as a " 'black replica handgun.' "

**DISCUSSION**

A.     THE JUVENILE COURT PROPERLY ORDERED RESTITUTION

Minor contends that "the trial court failed to exercise its discretion when awarding victim restitution exceeding $41,000."  For the reasons set forth *post*, we disagree.

1.     *ADDITIONAL PROCEDURAL HISTORY*

Included in a probation report filed on August 28, 2019, was a probation officer's statement that S.B. requested restitution totaling over $40,000.  The report included S.B.'s restitution request form, a letter regarding her medical treatment, and other documents.  In the form, S.B. requested the following in direct victim restitution: (1) iPhone replacement cost of $699.99; (2) Driver's license replacement cost of $30;

---

[2]  The factual summary is taken from the probation report filed on March 25, 2019.

(3) Cost for appointments and medications of $214; (4) Loss of income from September 22, 2018, through November 11, 2018, in the amount of $8,000 for time off taken under the Family Medical Leave Act.

S.B. also submitted a statement that acknowledged that she had been seeing a therapist for an eating disorder and "did not want to put that on this event." She, however, stated that since the incident involving minor, she had difficulty functioning because she did not feel safe, was unable to sleep, had intrusive memories and panic attacks, had experienced severe depression and anxiety, and had been diagnosed with posttraumatic stress disorder (PTSD). S.B. stated that her therapist did an intervention that led S.B. into inpatient treatment for 45 days. There, she was treated for both her PTSD and her eating disorder. She also stated that "due to this event and the PTSD it was the catalyst and contributor to require inpatient treatment and so I do think it is partially responsible since I specifically went through trauma treatment at Meadows Ranch."

In addition, S.B. submitted documents that she was aware that it would cost $700 per night for 45 days to be treated at Meadows Ranch. The total cost of $31,500 had been paid for by S.B. by credit card.

At the October 18, 2019, restitution hearing, the trial court told defense counsel that because S.B.'s supporting documents had established a prima facie case for restitution, minor would have to prove that the restitution request was incorrect at the next hearing.

5

In a probation report filed on November 8, 2019, a letter from S.B. was included. In the letter, S.B. requested restitution for the $31,500 payment for the inpatient treatment. S.B. again admitted that she had been battling an eating disorder since high school and anxiety in graduate school. Hence, she did not want to blame the robbery for her treatment. However, she stated the following: "That night in August completely changed my life. Due to the incident I suffer from PTSD, have changed medication, and battle with panic attacks along with my eating disorder only growing worse. The weeks following the event I didn't see an end to the sleepless nights, panic attacks, intrusive memories and being afraid to do anything outside the comfort of my home or work. We even moved from our apartment since it happened right down the street. It reached the point where my therapist who I had seen for 3 years did an intervention and told me it was time for a higher level of care and that I needed to go to inpatient treatment. I was in inpatient treatment for PTSD and eating disorder from September 22 until November 6, 2018."

On November 21, 2019, defense counsel objected to the $31,500 for inpatient treatment because it was a facility for eating disorders—something the victim had suffered from before the robbery. Defense counsel also objected to the lost wage claim of $8,000, claiming it was "double dipping" because S.B. had already been compensated under the Family and Medical Leave Act of 1993 (FMLA) (29 U.S.C. §§ 2601-2654). The People requested that S.B. be awarded the entire amount because minor caused S.B.'s trauma and aggravated her eating disorder. The trial court reserved those issues for another hearing. The court then ordered that minor pay, as probation term No. 49,

6

restitution of $943.99 for S.B.'s phone, driver's license, therapy appointments, and medications.

S.B. did not attend the final restitution hearing on December 11, 2019. After the prosecutor and defense counsel argued their positions, the trial court indicated that it had reviewed the victim's written statement, supporting documents, and legal authority. The court found that the record proved that S.B. took a leave of absence from work from September 22 to November 13, 2018. The court also found that minor's conduct proximately and actually caused S.B.'s PTSD and aggravated her eating disorder—which necessitated S.B.'s participation in the inpatient program. Furthermore, the court found that ordering minor to pay for S.B.'s requested restitution served a rehabilitative purpose rationally related to minor's criminal conduct because it ensured that minor appreciated the harm that his act caused his victim.

Based on the findings and its review of case authority, the trial court concluded that there was a rational and factual basis to award the requested restitution to S.B. and modified probation term No. 49 to include $31,500 in medical expenses and $8,000 for lost wages. Those amounts combined with the $943.99 previously ordered totaled $40,443.00 in restitution.

## 2. *LEGAL BACKGROUND*

Welfare and Institutions Code section 730.6 governs restitution in juvenile delinquency cases. It provides: "Upon a minor being found to be a person described in [Welfare and Institutions Code s]ection 602, . . . the court *shall order* the minor to pay . . . [¶] . . . [¶] [r]estitution to the victim or victims, if any, in accordance with subdivision

(h)." (Welf. & Inst. Code, § 730.6, subd. (a)(2)(B), italics added.) "Restitution . . . shall be imposed in the amount of the losses, as determined. . . . The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record. . . . A restitution order . . . shall be of a dollar amount sufficient to fully reimburse the victim or victims for all determined economic losses incurred as the result of the minor's conduct for which the minor was found to be a person described in Section 602, including all of the following: [¶] . . . [¶] (C) Wages or profits lost due to injury incurred by the victim." (Welf. & Inst. Code, § 730.6, subd. (h)(1).) "A minor shall have the right to a hearing before a judge to dispute the determination of the amount of restitution." (Welf. & Inst. Code, § 730.6, subd. (h)(2).) Although Welfare and Institutions Code section 730.6 applies to restitution orders in probation and nonprobation cases, in probation cases it sets the floor rather than the ceiling on permissible restitution orders. (*In re T.C.* (2009) 173 Cal.App.4th 837, 844-845; see *People v. Anderson* (2010) 50 Cal.4th 19, 29 [in adult cases, restitution in probation cases is not limited by the mandatory restitution statute, Pen. Code, § 1202.4].)

A court may order restitution as a condition of probation for conduct underlying a dismissed charge. (*In re T.C.*, *supra*, 173 Cal.App.4th 849, 843-850.) The purpose of victim restitution in delinquency cases is: (1) to make the victim whole by compensating the victim for economic losses; (2) to rehabilitate the minor; and (3) to deter future delinquent behavior. (*In re Cristian S.* (2017) 9 Cal.App.5th 510, 519.) A victim's right to restitution should be broadly and liberally construed. (*In re Alexander* (2011) 192 Cal.App.4th at p. 853.)

8

The court must impose restitution in an amount sufficient to fully reimburse the victim for all determined economic losses incurred as a result of the minor's delinquent conduct unless it finds compelling and extraordinary reasons to do so. (*In re S.O.* (2018) 24 Cal.App.5th 1094, 1099-1100 (*S.O.*).) Moreover, the court may use any rational method in determining the amount of restitution as long as it is reasonably calculated to make the victim whole and is consistent with the purpose of rehabilitation. (*In re Alexander A.*, *supra*, 192 Cal.App.4th at p. 853.)

The minor has a right to a hearing to dispute the amount of restitution claimed by the victim. (*In re Cristian S.*, *supra*, 9 Cal.App.5th a p. 519.) The standard of proof at the hearing is a preponderance of the evidence. (*S.O.*, *supra*, 24 Cal.App.5th at pp. 1102-1103.) Once the victim makes a prima facie showing of the economic loss caused by the minor, the burden shifts to the minor to disprove the amount of loss claimed. (*People v. Superior Court* (*Lauren M.*) (2011) 196 Cal.App.4th 1221, 1226.) No particular proof is required, and the court can consider the victim's statement in a probation report as prima facie evidence of loss. (See *People v. Lockwood* (2013) 214 Cal.App.4th 91, 96 [discussing evidence of loss under Penal Code section 1202.4[3]].)

On appeal, an order of direct victim restitution is reviewed for abuse of discretion. (*Luis M. v. Superior Court* (2014) 59 Cal.4th 300, 305.) An order will be upheld if there is a factual and rational basis for the restitution amount. (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132.)

---

[3] Welfare and Institutions Code section 730.5 parallels Penal Code section 1202.4. (*In re M.W.* (2008) 169 Cal.App.4th 1, 4.)

### 3. *ANALYSIS*

In this case, minor contends that "the trial court's victim restitution award includes economic losses which went beyond making the victim economically whole; therefore, the award amount is arbitrary and should be vacated." For the reasons set forth *post*, we disagree.

#### a. The trial court properly awarded $8,000 for lost wages

Minor contends the trial court abused its discretion in awarding $8,000 for lost wages because the award "exceeded the victim's losses."

In this case, the parties do not dispute that S.B. was on leave from her job from September 22 to November 13, 2018, and that she would have earned $8,000 in wages during that time. Minor, however, argues that the court abused its discretion in ordering restitution of $8,000 for lost wages because "the award may not include any payments received as part of the state disability insurance fund. (*In re K.F.* (2009) 173 Cal.App.4th 655, 666 [(*K.F.*)].)"

In *K.F.*, the appellate court found that the $630 paid to the victim under the state disability insurance fund was not a compensable financial loss to support the order of restitution. (*K.F.*, *supra*, 173 Cal.App.4th at pp. 657-658, 666.) Here, defendant cites no evidence that the victim received funds under the state disability insurance fund. The evidence simply showed that S.B. received benefits under FMLA and the Moore–Brown–Roberti Family Rights Act (CFRA) (Gov. Code, §§ 12945.1, 12945.2) neither of which provide compensation. FMLA leave is unpaid. (29 U.S.C. § 2612, subd. (c); *Moreau v.*

10

*Air Force* (9th Cir. 2004) 356 F.3d 942, 945.)  Leave under CFRA is also unpaid.  (Gov. Code, § 12945.2, subd. (d).)

Although FMLA and CFRA allow the substitution of paid leave, such as sick leave or vacation time (see 29 U.S.C. § 2612, subds. (c) & (d); Gov. Code, § 12645.2, subd. (e)), the depletion of such paid leave constitutes an economic loss to the employee. In *K.F.*, *supra*, 173 Cal.App.4th at page 666, the court recognized the use of paid sick leave as a compensable economic loss under this provision:  "The evidence was sufficient to show that the victim continued to be paid by his employer only by depleting his sick leave.  This depletion represented a loss to him—the credits consumed would not be available to cover future illnesses or for whatever other beneficial purpose the employer might allow."

Accordingly, because S.B.'s leave under the FMLA and/or the CFRA was not paid under a state disability fund and any use of her paid time constituted a compensable loss, and there was no evidence that the victim received disability payments, we find that the trial court did not abuse its discretion in awarding S.B. $8.000 for lost wages.

> b.  <u>The trial court properly awarded medical expenses to S.B.</u>

Minor contends that "the trial court abused its discretion in awarding [S.B.] $31,714 in medical expenses."  Minor states that "[a]lthough the cost of mental health is included in economic losses (*In Re Scott H.* (2013) 221 Cal.App.4th 515, 520-521), the recoupment from a victim must be limited to costs incurred as a result of a defendant's criminal conduct.  (*People v. Jones* (2010) 187 Cal.App.4th 418, 424-427.)"

11

The People first contend that minor failed to object to the $214 requested and awarded for medications and therapy appointments. Therefore, the People argue that minor "has forfeited that part of his claim" on appeal. We agree that minor has forfeited the $214 claim by failing to object. (See *People v. Gamache* (2010) 48 Cal.4th 347, 409; *People v. Pangan* (2013) 213 Cal.App.4th 574, 581-583; *People v. Fortune* (2005) 129 Cal.App.4th 790, 793-794.)

As to the remaining $31,500, the People state that "the court must impose victim restitution in an amount sufficient to fully reimburse the victim for all determined economic losses incurred as a result of the minor's delinquent conduct. (*S.O.*, *supra*, 24 Cal.App.5th at pp. 1099-1100.)" Economic losses are incurred if the minor's act is a substantial factor in causing the injury. (*In re S.E.* (2020) 46 Cal.App.5th 795, 804-805; *In re A.M.* (2009) 173 Cal.App.4th 668, 673.)

In this case, S.B. submitted letters that were included in two probation reports. Although she expressed some reluctance to ask for the $31,500 for inpatient treatment because she had received therapy for an eating disorder and anxiety prior to the robbery, S.B. clearly demonstrated that she had trouble feeling safe, sleep deprivation, intrusive memories, panic attacks, severe depression, and PTSD after being robbed. Moreover, those serious problems after the robbery led her therapist to do an intervention; the therapist told S.B. that she needed inpatient treatment at Meadows Ranch. There, S.B was treated for PTSD and for her eating disorder from September 22 to November 6, 2018. S.B. stated that the PTSD caused by the robbery was the catalyst and a contributor to her trauma treatment at Meadows Ranch. S.B. believed that if it were not for the

12

robbery, she would have simply seen her therapist; she would not have sought inpatient treatment.

In the letters, S.B. established that the robbery was a substantial factor in causing her to receive inpatient treatment at Meadows Ranch for PTSD, trauma, and her eating disorder. A substantial factor is more than a trivial or remote factor, and it does not have to be the only factor that caused the injury. (*In re A.M.*, *supra*, 173 Cal.App.4th at p. 673.) Although S.B. admitted that she had suffered from an eating disorder prior to the robbery, the robbery not only exacerbated her eating disorder and anxiety, it also made her suffer from PTSD. Therefore, S.B.'s therapist recognized that S.B. could no longer solely rely on outpatient therapy. Because the robbery was a substantial factor for S.B.'s inpatient treatment at Meadow Ranch, the trial court did not abuse its discretion in awarding S.B. $31,500 for the inpatient treatment.

On appeal, minor relies on *People v. Fortune*, *supra*, 129 Cal.App.4th 790 to support his position that the court abused its discretion in awarding S.B. $31,500 for her inpatient treatment. Minor contends that in *Fortune*, "the court agreed that in calculating [the] victim restitution order[, the court] must subtract out loss not arising from the crime as it would make the victim more than whole. ([*Fortune*,] at pp. 794-795.)" In *Fortune*, a food stamp fraud case, the court concluded that the victim's restitution amount was not the total cost of the food stamps issued to the defendant, but was limited to the amount over what should have been issued to the defendant. (*Id.* at p. 795.) Minor, therefore, argues that under *Fortune*, "the total medical victim restitution should have first subtracted out such an amount [the amount the victim would have spent on attending

therapy sessions and medication for her eating disorder and anxiety], but the court failed to exercise its discretion in doing so." Therefore, minor is arguing that the evidence in this case does not support a finding "for $31,714 in medical and counseling bills because [S.B.] would have incurred some amount of medical and counseling bills for her eating disorder and anxiety. . . . *The trial court should have subtracted out the cost of her weekly therapist appointments and medications, as they did not arise from the crime and recoupment of the cost would make the victim more than whole*." (Italics added.)

We disagree. The facts in this case are distinguishable from the facts in *Fortune*. In *Fortune*, the court knew the amount of food stamps the defendant would have been entitled to in the absence of the fraud. Therefore, the loss caused by the fraud was just the food stamps received in excess of that amount. Here, unlike *Fortune*, no one can say with certainty what therapy and/or medication costs the victim would have incurred had the robbery not occurred; we can only speculate about the hypothetical costs.

Here, although S.B. suffered from anxiety and an eating disorder prior to the robbery, the trial court considered all the evidence presented. As provided *ante*, however, the court properly did not consider any hypothetical costs, which was not evidence. In making its award, the court stated: "So based on the victim's statements, the Court finds sufficient factual basis to award the victim's loss of earnings claims. The minor's conduct was the proximate and actual cause of the victim's PTSD, which aggravated a preexisting eating disorder. This led the victim's therapist recommending a higher level of intervention in the form of inpatient treatment at Meadows Ranch." The court went on to note, "Minor contends that the Meadows Ranch only treats eating

14

disorders, but the home page submitted by defense counsel clearly shows it also treats trauma. [¶] Based on all of the foregoing analysis, the Court finds a factual and rational basis and orders the minor to pay the victim's loss of earnings claim and medical expenditures. *The minor has offered no evidence to show that the represented value is inaccurate. . . .* [¶] . . . [¶] *The Court actually considered reducing those amounts, but I could not find justification for that.* The code requires that the Court makes the determination of the victim restitution and award that to the victim directly. [¶] In requiring the minor to pay the victim restitution for economic loss, it serves as a rehabilitative purpose rationally related to his criminal conduct because it ensures that he appreciates the harm that he has caused to the victim by his acts." (Italics added.)

Accordingly, keeping the goals of juvenile court law in mind and the juvenile court's thoughtful explanation for its decision regarding the restitution order, we find no abuse of discretion in the juvenile court's order awarding S.B. $31,500 in restitution for her treatment at Meadows Ranch.

## DISPOSITION

The juvenile court's restitution order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER

Acting P. J.

We concur:

CODRINGTON

J.

MENETREZ

J.

15