Filed 11/10/25  P. v. Colosimo CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KENDALL COLOSIMO,<br><br>    Defendant and Appellant. | D085059<br><br><br>(Super. Ct. No. SCD298307) |

APPEAL from a judgment of the Superior Court of San Diego County, Lisa R. Rodriguez, Judge.  Affirmed.

Stephanie L. Gunther, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Chief Assistant Attorneys General, Daniel Rogers, Alana C. Butler and Amanda Lloyd, Deputy Attorneys General, for Plaintiff and Respondent.

Kendall Colosimo pled guilty to hit and run with death or permanent serious injury in violation of Vehicle Code section 20001, subdivision (b)(2). The trial court ordered Colosimo to pay restitution to the minor victim's parents for the wages they lost while caring for their injured son.  Colosimo

argues on appeal that: (1) the court erred in granting lost wages for the parents after the victim reached the age of majority; (2) there was insufficient evidence to support the portion of the order granting restitution for the mother's lost wages; and (3) the court should have offset the restitution award by $90,000, the amount of the insurance settlement after subtracting attorney fees and medical bills.

We conclude that (1) the trial court correctly found the parents were entitled to lost wages as victims themselves under article I, section 28(e) of the California Constitution; (2) there was sufficient evidence to support the court's finding that the mother was owed lost wages; and (3) the court properly offset the restitution amount by the insurance settlement. Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In March 2023, 17-year-old A.A. was on a bicycle and preparing to make a turn when a black SUV struck him from behind at approximately 30 miles per hour. The minor was thrown from his bike, and the driver of the SUV did not slow down or stop. The accident left the minor with a shattered pelvis, requiring two surgeries and ten days in the surgical intensive care unit. He turned 18 three and a half months after the accident.

After receiving a tip from a witness, the police found a black SUV with front end damage at Colosimo's residence. A few days later, almost a week after the accident, Colosimo surrendered to police. During the investigation, law enforcement found video footage of Colosimo at a bowling alley consuming alcohol over the span of two hours just before the incident. The surveillance video showed him swaying, staggering, and nearly tripping before leaving the bowling alley.

The People charged Colosimo with one count of hit and run with death or permanent serious injury in violation of Vehicle Code section 20001, subdivision (b)(2). Colosimo pled guilty as charged.

At the sentencing hearing, the trial court sentenced Colosimo to probation and ordered restitution. At a subsequent hearing, the People requested restitution in the amount of $154,450.76 for the victim's parents' lost wages, the victim's medical bills, and the price of the electric bike and some personal effects damaged in the accident.

The court began by stating that "the parents of the direct victim here are also considered victims, and the restitution order would be directly to them as opposed to the minor child." The court heard from the minor's father, who testified that after returning home from the hospital, his son was bedridden for 10 weeks. Both parents cared for him during this period, helping him use the restroom, driving him to appointments, and administering medication. The minor required six months of full-time care, during which the parents were basically on-call "24/7[.]" In the three months after that, their son still required part-time care.

Both parents were independent contractors at the time of the accident, and both stopped working through the remainder of the year. The People entered into evidence the parents' 2022 tax return which showed the couple's combined wages were $225,659 for the year before the accident. The father testified that this was a "typical amount" of yearly income for them. The father calculated their combined lost wages as being $141,036.87 by first dividing the couple's combined 2022 wages in half to account for the six months they did not work. Then he added a quarter of that amount to account for the three months they worked part time.

3

There was a civil settlement between the minor and Colosimo's insurance company. The minor was awarded $250,000, but only received $90,000 of the settlement after accounting for attorney fees and medical bills.

At the restitution hearing, Colosimo argued he should not be required to pay restitution for the parents' lost wages after the minor reached the age of majority in June 2023. The court found that under the California Constitution, the parents were considered victims of the crime and were therefore entitled to restitution. The court calculated the restitution amount by using the parents' 2022 income as a baseline and considering the father's testimony that they lost six months of full-time wages and three months of part-time wages. The court subtracted $15,000 from that amount because the father was still able to attend a speaking arrangement after the accident. The court further offset the requested restitution amount by $13,413.89 to account for the portion of the insurance settlement which covered the then-minor victim's medical bills and damaged property. In total, the court awarded $126,036.87 of restitution solely for the parents' lost wages.

## DISCUSSION

Colosimo argues three main points on appeal: (1) the trial court erred in granting lost wages to the minor victim's parents for caring for him after he reached the age of majority; (2) the court erred in granting restitution for the mother's lost wages because there was insufficient evidence to support the award; and (3) the court should have offset the restitution award by an additional $90,000, the amount of the insurance settlement after subtracting attorney fees and medical bills. We disagree on all points and affirm the restitution order.

4

A.    *Classifying the Parents as Victims*

First, the trial court properly considered the minor's parents to be victims in their own right because the California Constitution guarantees a right of restitution to all victims (Cal. Const., art. I, § 28(b)(13)) and defines a victim as "a person who suffers direct or threatened physical, psychological, or financial harm as a result of the commission or attempted commission of a crime or delinquent act." (*Id.*, subd. (e).)  It also explicitly states: "The term 'victim' also includes the person's . . . parents." (*Ibid.*)  The minor's parents squarely fit into the Constitution's definition of victim, both because they are a direct victim's parents and because they suffered financial harm as a result of the crime.

Colosimo argues that using the Constitution's definition of "victim" renders Penal Code section 1202.4, subdivision (f)(3)(D) (hereafter, "section 1202.4 (f)(3)(D)") surplusage because that section only makes restitution available for wages lost by the parents of minor victims.  We disagree.  Section 1202.4(f)(3)(D) was enacted in 1994 *before* the definition of "victim" was broadened in the state constitution in 2008.  Specifically, the language in section 1202.4(f)(3)(D) granting restitution for "wages or profits lost by the minor's parent, parents, guardian, or guardians, while caring for the injured minor" has remained unchanged since 1994.[1]  (Stats. 1994, ch. 1106, § 3.)  But "the Victims' Bill of Rights Act of 2008, known as 'Marsy's Law,' provides for a broad spectrum of victim's rights, including restitution." (*In re Scott H.* (2013) 221 Cal.App.4th 515, 522 (*Scott H.*).)  When Marsy's Law was codified in the California Constitution in 2008, it broadened the definition of "victim" to include the direct victim's parents.  (Cal. Const., art. I, § 28, subd. (e).)

---

[1]    At the time the section was enacted, this language was under Penal Code section 1202.4, subdivision (g)(3).

When statutory language conflicts with the California Constitution, the Constitution's provision controls. (*Scott H., supra*, 221 Cal.App.4th at p. 522 [holding that restitution under Welf. & Inst. Code section 730.6 includes a right of restitution to derivative victims as defined by article I, section 28 of the California Constitution].) Therefore, to the extent that the Penal Code may have once limited restitution to wages lost while caring for a minor and not an adult, it has been supplanted by Marsy's Law. Limiting restitution only to parents caring for minors would run counter to the Constitution's provisions expanding the definition of "victim" *after* section 1202.4(f)(3)(D) was enacted. Accordingly, we are not persuaded that the trial court erred in concluding the victim's parents in this case were also victims entitled to restitution for their own economic injuries incurred as a result of the crime.

B.     *Awarding the Mother's Lost Wages*

Second, there is sufficient evidence to support the trial court's award of restitution for the mother's lost wages. When a defendant is ordered to pay restitution as a condition of probation under Penal Code section 1203.1, the court has broad discretion to award restitution as long as "condition[s] [are] reasonably related either to the crime of which the defendant is convicted or to the goal of deterring future criminality." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1123.) The court needs "a rational and factual basis for the amount of restitution ordered." (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542.) "At a victim restitution hearing, a prima facie case for restitution is made by the People based in part on a victim's testimony on, or other claim or statement of, the amount of his or her economic loss." (*People v. Millard* (2009) 175 Cal.App.4th 7, 26 (*Millard*).) After the prima facie case is made, the burden shifts to the defendant to show that the loss was a

6

different amount than what the victim claims. (*Ibid.*, quoting *People v. Prosser* (2007) 157 Cal.App.4th 682, 691.)

The father testified to the minor's severe injuries and the high level of care that he required. He was bedridden for 10 weeks, requiring assistance around the clock. He could not walk on his own and needed help using the restroom and administering medication. After being bedridden, he was dependent on walkers and wheelchairs, requiring substantial assistance. Both parents were independent contractors, and they both stopped working through the remainder of the year to care for their son while he recovered from his injuries. The father's testimony, along with the couple's tax return, created a prima facie case for restitution. (*Millard, supra*, 175 Cal.App.4th at p. 26; cf. *People v. Giordano* (2007) 42 Cal.4th 644, 650) [affirming restitution award for lost earnings based on decedent's W-2 form and victim testimony].) This provided a sufficient factual basis for the court's finding that both parents needed to stop working to take care of the minor. Importantly, Colosimo did not introduce any evidence to contradict the amount claimed by the father. Given the documentation offered and the father's unrefuted testimony, we conclude the court had a rational factual basis for ordering the amount of restitution it awarded for the mother's lost wages.

C.      *Offsetting the Restitution Award by the Insurance Settlement*

We further conclude that the court offset the restitution award by the proper amount from the insurance settlement. The minor was awarded an insurance settlement of $250,000 and received only $90,000 of this settlement, after paying attorney fees and hospital bills. The court found that the settlement covered those expenses and the cost to replace the property damaged during the collision. The court therefore offset the People's requested restitution amount (which did not include attorney fees) by

7

$13,413.89, which represented the cost of medical bills and personal property covered by the settlement.

Colosimo relies on *People v. Short* (2008) 160 Cal.App.4th 899 to argue that the restitution award should be offset by the entire amount of the insurance settlement. We disagree. *Short* stands for the proposition that if a victim receives an insurance settlement for a defendant's civil liability, the amount of restitution awarded in a criminal action must be offset by that settlement to the extent they are duplicative. (See *id.* at pp. 903–906 [remanding for trial court to determine what portion of insurance settlement should be allocated to reduce defendant's restitution obligation for medical costs].) Here, the settlement was awarded directly to the minor, not the parents, and the court properly offset the amount awarded to the parents to exclude categories of restitution already covered by the insurance settlement: medical bills and personal property. As discussed above, the parents were also victims under the California Constitution and were thus entitled to restitution for the additional economic harm they suffered, including lost wages. Colosimo does not dispute that those wages were not covered under the settlement between the direct victim and Colosimo's insurance company. Accordingly, the parents did not obtain a double recovery for their lost wages. We therefore conclude the court was correct in declining to offset the restitution award by the full insurance settlement amount.

8

## DISPOSITION

The judgment is affirmed.

BUCHANAN, J.

WE CONCUR:

DO, Acting P. J.

CASTILLO, J.