Filed 6/26/23  In re Jessie M. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re JESSIE M., a Person Coming Under the Juvenile Court Law. | B321807 |
| THE PEOPLE, | (Los Angeles County Super. Ct. No. FJ57508) |
| Plaintiff and Respondent, | |
| v. | |
| JESSIE M., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Miguel Espinoza, Judge.  Affirmed.

Laini Millar Melnick, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, David E. Madeo and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Jessie M. appeals from an order declaring him a ward of the juvenile court and committing him to a secure youth treatment facility (SYTF) for committing assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)). Appellant contends the juvenile court improperly construed Welfare and Institutions Code section 875 when setting a baseline term of three years confinement.[1] Notwithstanding the fact that the petition specifically pled that appellant committed the assault against a peace officer, appellant contends his rights to due process and fair notice were violated when juvenile court set his baseline term of confinement based in part on the fact that the victim was a peace officer.

We conclude that the juvenile court properly construed section 875 in setting a baseline term of confinement, and in so doing, did not violate appellant's rights to due process. We affirm.

_____

[1]   Subsequent unspecified references to statutes are to the Welfare and Institutions Code.

# BACKGROUND

Deputy Probation Officer P. Shackelford supervised appellant and other juveniles at a secured facility for troubled minors.[2] On February 12, 2022, Officer Shackelford sustained various injuries after appellant physically assaulted him. In April 2022, a one-count section 602 petition was filed against appellant, alleging that on February 12, 2022, "the crime of assault by means of force likely to produce great bodily injury, in violation of Penal Code 245(a)(4), a Felony, was committed by said minor, who committed an assault on the person of DPO P[.] Shackelford by means of force likely to produce great bodily injury." Following a contested adjudication hearing, the juvenile court found the count true beyond a reasonable doubt. The court sustained the petition and declared the offense a felony. At a continued disposition hearing, the court imposed a baseline term of three years confinement and maximum term of four years confinement in a SYTF. Appellant timely appealed.

# DISCUSSION

## A. The Juvenile Court Laws

If a minor is adjudged a ward under section 602, "the court may make any reasonable orders for the care, supervision, custody, conduct, maintenance, and support of

---

[2] The prosecution identified Officer Shackelford using his last name at the adjudication hearing. For consistency, we adopt the same designation.

3

the minor. . . ." (§ 727, subd. (a)(1).)  Courts have the discretion to place wards on probation, order commitment to a juvenile home, ranch, camp, or forestry camp, or for particular criminal offenses, order confinement to a county juvenile hall or a SYTF.  (§§ 727, subds. (a)(2)-(3), 730, subd. (a), 875, subd. (a).)

When considering the appropriate disposition in any section 602 case, "the court shall consider, in addition to other relevant and material evidence, (1) the age of the minor, (2) the circumstances and gravity of the offense committed by the minor, and (3) the minor's previous delinquent history."  (§ 725.5.)  Courts should also consider "the safety and protection of the public, the importance of redressing injuries to victims, and the best interests of the minor in all deliberations."  (§ 202, subd. (d).)  This scheme "is designed to give the court 'maximum flexibility to craft suitable orders aimed at rehabilitating the particular ward before it.' [Citation.]  Flexibility is the hallmark of juvenile court law, in both delinquency and dependency interventions."  (*In re Greg F.* (2012) 55 Cal.4th 393, 411 (*Greg F.*); accord, *In re Eddie M.* (2003) 31 Cal.4th 480, 507; § 202, subd. (a).)

Courts must consider these principles when "'interpreting and administering the juvenile court law, . . . .'"  (*In re Scott H.* (2013) 221 Cal.App.4th 515, 523.)  "[I]nsofar as they are substantially the same as existing statutory provisions relating to the same subject matter," amended provisions appearing in the Juvenile Court Law

4

"shall be construed as restatements and continuations thereof, and not as new enactments." (§ 201; accord, Cal. Rules of Court, rule 5.501(c)(1), (c)(2).)

## B. Amendments to Juvenile Court Laws: Section 875

As of July 1, 2021, juvenile courts had the discretion to commit wards to the Department of Corrections and Rehabilitation, Division of Juvenile Justice (D.J.J.) for serious criminal violations. (§ 731, subd. (a).) Prior to D.J.J. commitment, the juvenile court was required to set a maximum term of confinement "based upon the facts and circumstances of the matter . . . and as deemed appropriate to achieve rehabilitation." (§ 731, subd. (b).) Despite imposition of a maximum term of confinement, wards committed to the D.J.J. were subject to discharge proceedings by the Board of Juvenile Hearings under the jurisdiction of the D.J.J. (*Ibid.*; see §§ 1703, subd. (d), 1719, subd. (a), 1725, subds. (a)-(b).)

In 2020, the Legislature found it "necessary to close the [D.J.J.] and move the jurisdiction of [wards] to local county jurisdiction" to ensure "justice-involved youth[s] are closer to their families and communities and receive age-appropriate treatment." (Stats. 2020, ch. 337, § 1(b); accord, § 736.5, subds. (a)-(e).) In May 2021, the Governor signed into law Senate Bill No. 92, which announced the closure of the D.J.J. (Stats. 2021, ch. 18, § 12.) This development in juvenile justice realignment also added section 875 et seq., which

governs commitment to local "secure youth treatment facilities" (SYTF) in lieu of D.J.J. commitment. (See §§ 875, subd. (c)(1).)

Section 875, subdivision (a) provides, "commencing July 1, 2021, the [juvenile] court may order that a ward who is 14 years of age or older be committed to a [SYTF] for a period of confinement" under certain criteria not relevant here. As to the court's duty to impose an appropriate disposition, subdivision (b) of section 875 provides:

> "In making its order of commitment for a ward, the court shall set a baseline term of confinement for the ward that is based on the most serious recent offense for which the ward has been adjudicated. The baseline term of confinement shall represent the time in custody necessary to meet the developmental and treatment needs of the ward and to prepare the ward for discharge to a period of probation supervision in the community. The baseline term of confinement for the ward shall be determined according to offense-based classifications that are approved by the Judicial Council, as described in subdivision (h).[3] Pending the development and adoption of

---

[3] Section 875, subdivision (h)(1) provides: "By July 1, 2023, the Judicial Council shall develop and adopt a matrix of offense-based classifications to be applied by the juvenile courts in all counties in setting the baseline confinement terms described in subdivision (b). Each classification level or category shall specify a set of offenses within the level or category that is linked to a standard baseline term of years to be assigned to youth, based on their most serious recent adjudicated offense, who are committed to a [SYTF] as provided in this *(Fn. is continued on the next page.)*

6

offense-based classifications by the Judicial Council, the court shall set a baseline term of confinement for the ward utilizing the discharge consideration date guidelines applied by the [D.J.J.] prior to its closure and as set forth in Sections 30807 to 30813, inclusive, of Title 9 of the California Code of Regulations.  These guidelines shall be used only to determine a baseline confinement time for the ward and shall not be used or relied on to modify the ward's confinement time in any manner other than as provided in this section.  The court may, pending the adoption of Judicial Council guidelines, modify the initial baseline term with a deviation of plus or minus six months."  (§ 875, subd. (b).)

Sections 30807 through 30813 of title 9 of the California Code of Regulations, appearing under division 6 of the D.J.J. regulations, set forth "Offense Categories and Classification" to be used by the Board of Juvenile Hearings or the juvenile court to "establish a parole consideration date category" for D.J.J. commitments, and as relevant here, a baseline term of confinement to a SYTF.  (Cal. Code Regs., tit. 9, § 30805.)  Sections 30807 through 30813 enumerate each category offense and any "ward behavior" when committing an offense.  (*Ibid.*)  The "ward behavior"

_____

section.  The individual baseline term . . . in each case may be derived from a standard range of years for each offense level or category as designated by the Judicial Council."

7

described in sections 30807 through 30812 "may be determined by the court or the board." (*Ibid.*)

At issue in this case are two categories of offenses and their respective baseline terms of confinement. As provided in section 30811, category 5 offenses carry a baseline term of 18 months confinement. (Cal. Code Regs., tit. 9, § 30811.) Among the enumerated category 5 offenses is "Assault with . . . Force Likely to Produce Great Bodily Injury (245(a) Penal Code)." (*Id.*, § 30811, subd. (a)(1).) Section 30809 classifies category 3 offenses for which baseline terms of confinement are three years. One offense listed as a category 3 offense is "Assault with . . . Force Likely to Produce Great Bodily Injury upon a peace officer, firefighter, . . . or school personnel (245(a), (b), 245.2 and 245.3 Penal Code)." (*Id.*, § 30809, subd. (a)(9).)

## C.   Relevant Background

At the continued disposition hearing in this case, the juvenile court informed the parties that its findings would be based on the adjudicated offense "and also the history of [appellant's] conduct" as set forth in the probation reports. The court then questioned counsel about the appropriate disposition. Assuming SYTF commitment, appellant's trial counsel argued that the court was limited to imposing a baseline term of 18 months confinement as based on the adjudicated offense under Penal Code section 245, subdivision (a)(5). (See Cal. Code Reg., tit. 9, § 30811, subd. (a)(1)). The prosecution disagreed, arguing for a baseline

8

term of three years confinement based on appellant committing aggravated assault against a peace officer. (See *id.*, § 30809, subd. (a)(9)).[4] The court declared appellant a ward of the court, found less restrictive alternative dispositions unsuitable, and committed appellant to a SYTF. The court initially set a baseline term of three years confinement but continued the matter to permit supplemental briefing by the parties.

In his supplemental brief, appellant argued that under section 875, the prosecution was required to file formal charges with what appellant refers to as "the enhancing element" that he committed an assault upon a peace officer. In the event section 875 was ambiguous, the rule of lenity required the court to interpret section 875 in his favor. In its brief, the prosecution argued that the trial court could properly consider the circumstances of appellant's offense when setting the baseline term of confinement. The prosecution also argued that classification of appellant's offense as a category 3 offense did not enhance his sentence, as the three-year baseline term fell within the permissible disposition range without any enhancement. (See §§ 875, subd. (c)(1)(B) [confinement term shall not exceed middle term of imprisonment that can be imposed upon an adult convicted of same offense], 726, subd. (d)(1) [same]; Pen. Code, § 245, subd. (a)(4) [providing sentencing triad of

_____

[4]    Appellant's trial counsel conceded the adjudication hearing testimony had confirmed that Officer Shackelford "was a deputy probation officer working at [a secured youth facility]."

two, three, and four years for the offense of assault upon the person of another by any means of force likely to produce great bodily injury].)

At the continued disposition hearing, the court identified "a clear challenge . . . that the Legislature has asked the court and the parties to rely upon a section of the code of regulations that was not adopted with SYTF or [section] 875 in mind." To "earnestly harmonize the D.J.J. matrix with the letter and spirit of [section] 875," the court ordered a baseline term of three years confinement as a category 3 offense for committing an aggravated assault against a peace officer under title 9, section 30809, subdivision (a) of the California Code of Regulations. The court then imposed a maximum term of four years confinement.

## D. Analysis

Appellant contends the juvenile court improperly construed section 875 and the D.J.J. guidelines when setting his baseline term of confinement. In so arguing, appellant also contends that the juvenile court violated his constitutional right to fair notice by setting the baseline term for the "unadjudicated offense" of committing an aggravated assault on a peace officer. We disagree with both contentions.

1. *The Juvenile Court Properly Construed Section 875*

We independently construe section 875 and the relevant regulations to determine if the juvenile court properly set appellant's baseline term of confinement. (See *In re Carlos H.* (2016) 5 Cal.App.5th 861, 866; see also *Schmidt v. Foundation Health* (1995) 35 Cal.App.4th 1702, 1710 ["the same rules governing the construction and interpretation of statutes apply to the construction and interpretation of administrative regulations"].)

"'Our role in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citation.] Because the statut[e's] language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning. [Citation.] We do not, however, consider the statutory language in isolation, but rather examine the entire substance of the statute in order to determine the scope and purpose of the provision, construing its words in context and harmonizing its various parts. [Citation.]' [Citation.]" (*People v. Castillolopez* (2016) 63 Cal.4th 322, 329; see *Hoffmann v. Young* (2022) 13 Cal.5th 1257, 1266 [courts must consider "the provision at issue in the context of the whole statutory scheme"].) "'Ultimately we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute.'

11

[Citation.]"  (*Mays v. City of Los Angeles* (2008) 43 Cal.4th 313, 321.)

With these principles in mind, we now consider the language of section 875, subdivision (b), which requires setting a baseline term of confinement based on "the most serious recent offense for which the ward has been adjudicated.  . . .  Pending the development and adoption of offense-based classifications by the Judicial Council, the court shall set a baseline term of confinement for the ward utilizing the discharge consideration date guidelines applied by the [D.J.J.] prior to its closure and as set forth in Section 30807 to 30813, inclusive, of Title 9 of the California Code of Regulations."

Relying solely on the first sentence in section 875, subdivision (b), appellant contends the juvenile court was limited to setting his baseline term of confinement based *only* on the elements of his adjudicated offense.  In other words, appellant contends the juvenile court was prohibited from considering any circumstance attending his offense.  Under this interpretation, appellant contends his baseline term of confinement is 18 months.  (See Cal. Code Regs., tit. 9, § 30811, subd. (a)(1).)

We disagree with appellant's interpretation.  To begin with, section 875 instructs courts to "utiliz[e] the discharge consideration date guidelines applied by the [D.J.J.]," and those guidelines permit consideration of facts beyond the particular elements of an adjudicated offense.  As appellant himself recognizes, to *correctly* utilize the category offenses

12

listed in sections 30807 to 30813 of title 9 of the California Code of Regulations, section 30805 directs the Board of Juvenile Parole Hearings and the court to consider "ward behavior" described in each category offense when establishing a "parole consideration date category [or as here, a baseline term of confinement,] in accordance with such determination." If adopted, appellant's interpretation would impliedly repeal a significant portion of the D.J.J. guidelines on which section 875 relies.[5]

From this D.J.J. guideline, we discern no ambiguity in section 875, subdivision (b). To adequately discharge its duty to determine a baseline term of confinement from the category offenses listed in section 30807 through 30813, the juvenile court must consider the "ward behavior" identified in those sections. Here, it is undisputed that appellant committed an aggravated assault (Pen. Code, § 245, subd. (a)(4)), and that he did so against Officer Shackleford, a peace officer as a matter of law. (See § 283 ["[e]very . . . deputy probation officer shall have the powers and authority conferred by law upon peace officers"].) Appellant's offense

---

[5]    Many of the category 2, 3, and 4 offenses listed in sections 30807 through 30813 contemplate ward behavior in connection with an adjudicated offense (i.e., infliction of substantial injury, use of a deadly weapon, and committing the offense against a particular victim). (See, e.g., Cal. Code Regs., tit. 9, §§ 30808, subd. (a)(2); 30809, subds. (a)(6).) Other category offenses contemplate recidivism. (See *id.*, § 30810, subd. (a)(21).) These category offenses, each reflecting circumstances beyond the elements of an adjudicated offense, would be rendered meaningless under appellant's interpretation of section 875.

13

qualifies as a category 3 offense.  (See Cal. Code Regs., tit. 9, § 30809, subd. (a)(9).)

Appellant's interpretation isolates portions of section 875, and in doing so, ignores express language in the statute designed to ensure flexibility in crafting suitable disposition orders.  (See § 875, subd. (b) [any baseline term imposed must "represent the time in custody necessary to meet the developmental and treatment needs of the ward and to prepare the ward for discharge . . . in the community]."")  To give meaning and effect to these considerations, section 875 should be construed as vesting juvenile courts with discretion to utilize the D.J.J. guidelines in a manner that meets the goal of preparing the ward for discharge into the community.  (*Ibid.*)

Beyond the plain language and purpose of section 875, appellant's restrictive interpretation of section 875 also conflicts with the general flexibility inherent in the juvenile court sentencing scheme (§ 725.5).  As this interpretation significantly curtails a juvenile court's broad discretion when imposing an appropriate disposition, we decline to adopt it. (*Greg F.*, *supra*, 55 Cal.4th at p. 410 ["[i]n interpreting a statute, courts are obligated to 'adopt a common sense construction over one leading to mischief or absurdity'"]; *Hopkins v. Superior Court* (2016) 2 Cal.App.5th 1275, 128 [courts must harmonize two codes as blending into each other, and when possible, must be read together to give effect to all provisions therein].)

14

To the extent appellant contends the rule of lenity applies in this case, requiring his interpretation to be given preference over other reasonable interpretations, we disagree. "The rule of lenity does not apply every time there are two or more reasonable interpretations of a penal statute. [Citation.] Rather, the rule applies "'only if the court can do no more than guess what the legislative body intended; there must be an *egregious* ambiguity and uncertainty to justify invoking the rule.'" [Citation.] In other words, 'the rule of lenity is a tie-breaking principle, of relevance when "'two reasonable interpretations of the same provision stand in relative equipoise. . . .'"' [Citation.]" (*People v. Manzo* (2012) 53 Cal.4th 880, 889.) As discussed *ante*, we perceive no degree of uncertainty in section 875, and therefore find the rule of lenity inapplicable in this case.

In sum, we conclude that the juvenile court properly construed section 875 and all relevant regulations when setting appellant's baseline term of three years confinement.

2.    *No Violation of Due Process*

Anticipating our result above, appellant alternatively contends that the juvenile court violated his due process rights to fair notice by setting a baseline term of confinement on an "unadjudicated offense" of assault against a peace officer. We disagree.

"'[D]ue process requires that a minor, like an adult, have adequate notice of the charge so that he may intelligently prepare his defense. [Citation.]' [Citation]

15

Compliance with this requirement has been held by the Supreme Court to mandate that the minor 'be notified, in writing, of the specific charge or factual allegations to be considered at the hearing, and that such written notice be given at the earliest practicable time, and in any event sufficiently in advance of the hearing to permit preparation.' [Citation.]" (*In re Robert G.* (1982) 31 Cal.3d 437, 442.)

It is unclear whether these principles apply to a juvenile delinquency disposition hearing. (See *In re Gary B.* (1998) 61 Cal.App.4th 844, 851 [rejecting due process argument for fitness determination under former section 707, subdivision (b)]; see also *Alfredo A. v. Superior Court* (1994) 6 Cal.4th 1212, 1215 ["in the words of the Supreme Court, juvenile proceedings are 'fundamentally different' from adult criminal proceedings, requiring that a 'balance' be struck between the 'informality' and 'flexibility' that must of necessity inhere in juvenile proceedings"].) We need not decide this question, for we discern no violation of due process in this case.

The petition in this case provided appellant fair notice of the specific charge (Pen. Code, § 245, subd. (a)(4)), *and* the circumstances underlying that charge, including the allegation that appellant assaulted a peace officer. From the date of filing the petition, appellant understood these allegations as serving the basis for adjudication and disposition. No due process violation occurred. (See *People v. Jimenez* (1992) 8 Cal.App.4th 391, 398 ["[t]o avoid due process violations, the facts giving rise to a sentence

16

enhancement must be alleged in the accusatory pleading"];
*People v. Allen* (1985) 165 Cal.App.3d 616, 630-631
[allegation that the defendant inflicted great bodily harm
"allege[d] the same facts necessary for" a sentence
enhancement].)

    *People v. Mancebo* (2002) 27 Cal.4th 735 (*Mancebo*), on
which appellant exclusively relies, is inapposite. In that
case, the defendant was convicted of various sex offenses for
which he was subject to sentencing under the One Strike law
(Pen. Code, § 667.61). (*Id.* at p. 738.) The One Strike law
"sets forth an alternative, harsher sentencing scheme for
certain forcible sex crimes" under specified circumstances.
(*Ibid.*) Using the One Strike law, the trial court sentenced
the defendant to two indeterminate 25-year-to-life terms for
committing forcible rape against one victim under specified
circumstances (gun use and kidnapping), and forcible
sodomy against another victim under specified
circumstances (gun use and tying or binding). (*Ibid.*; see
Pen. Code, § 667.61, subds. (a), (e).) The trial court then
sentenced the defendant to two additional 10-year terms for
separate gun-use enhancements (Pen. Code, § 12022.5, subd.
(a)) against each victim. (*Mancebo*, *supra*, at p. 738.) When
imposing sentence, the trial court conceded it had both
imposed One Strike sentences and additional enhancements
for gun use. (*Ibid.*) To avoid imposing multiple aggravated
sentences on the same circumstance, the trial court found
that "it had the authority to substitute [an unpled multiple-
victim] circumstance" under the One Strike law to replace

17

the gun use circumstance under the One Strike law. (*Id.* at pp. 738-739.)

Our Supreme Court considered "whether the circumstance of gun use was available to support [both gun enhancements under Penal Code] section 12022.5(a) . . . when gun use had already been properly pled and proved as a basis for invoking One Strike sentencing." (*Mancebo*, *supra*, 27 Cal.4th at p. 738.) To answer this question, the court looked to the express pleading and proof requirements under the One Strike law, which "requires that '[f]or the penalties provided in this section to apply, the existence of any fact required under subdivision (d) or (e) *shall be alleged in the accusatory pleading* and either admitted by the defendant in open court or found to be true by the trier of fact.'" (*Id.* at p. 743.) The Court held that the trial court violated the pleading provisions in the One Strike law and due process by using the multiple-victim circumstance that was never alleged or found true by the trier of fact. (*Ibid.*; see *id.* at p. 745 ["[i]n other words, no factual allegation in the information or pleading in the statutory language informed defendant that if he was convicted of the underlying charged offenses, the court would consider his [convictions against multiple victims] as a basis for One Strike sentencing"].)

Relying on this analysis in *Mancebo*, appellant contends the juvenile court could not impose a term of confinement based on a factual circumstance properly pleaded in an accusatory pleading but untethered to a

18

particular criminal offense or sentencing factor. Appellant construes *Mancebo* too broadly. The Court in *Mancebo* cautioned that its holding was "limited to a construction of the language of [Penal Code] section 667.61, subdivisions (f) and (i), read together, as controlling here." It added, "We have no occasion in this case to interpret other statutory provisions not directly before us . . . ." (*Mancebo, supra*, 27 Cal.4th at p. 745, fn. 5.) The Court did not purport to announce a pleading requirement for any aggravating circumstance that a criminal or juvenile court can consider when imposing sentence or disposition. On the contrary, the Court has clarified both before and after *Mancebo* that due process does not require "rigid code pleading or the incantation of words." (*People v. Anderson* (2020) 9 Cal.5th 946, 957; *People v. Thomas* (1987) 43 Cal.3d 818, 826.) Absent any reasoned argument by appellant requiring this type of pleading,[6] we decline to require it in this case. Omission of the circumstance in aggravation, as provided in the relevant D.J.J. guidelines, did not violate appellants' right to due process and fair notice.

---

[6] The Determinate Sentencing law currently prohibits imposition of any sentence above the middle term of a sentencing triad that is based on an aggravating circumstance neither stipulated to by the criminal defendant nor found true beyond a reasonable doubt by the trier of fact. (Pen. Code, § 1170, subd. (b)(2), as amended by Stats. 2021, ch. 731, § 1.3.)

## DISPOSITION

The disposition order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MORI, J.

We concur:

COLLINS, Acting P. J.

ZUKIN, J. *

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.